Good afternoon. May it please the court. My name is Brian Soto and I represent Petitioner Jorge Oseida Jr. As requested, I will first address the effect of Nasralla on this case. In Nasralla, the Supreme Court held that courts of appeals are not precluded from reviewing factual challenges to CAT orders. Nasralla applies in the present case because Mr. Oseida was placed into expedited removal proceedings under 8 U.S.C. 1228 as a non-citizen with an aggravated felony conviction. Mr. Oseida contested his deportability both under the Convention Against Torture as well as 8 U.S.C. 1231b3. He is seeking protection in the form of withholding of removal and withholding under CAT. Despite being found credible by asylum officer during a reasonable fear interview where Mr. Oseida asserted fear of persecution and torture at the hands of not only gangs such as MS-13, MARA-18, and CLICA but also Guatemalan police, nonetheless the asylum officer concluded that Mr. Oseida does not have a reasonable fear of persecution or torture. During reasonable fear review proceedings where Mr. Oseida asserted for the first time his fears of persecution and torture on account of being a homosexual male, the IJ found no error in the asylum officer's decision and found that the applicant's claim based on sexual orientation did not establish credible fear of future persecution or torture. The IJ's finding during the reasonable fear review proceeding effectively serves as an order denying Mr. Oseida's claim for withholding of removal and withholding under CAT. Thus, Nasrallah provides this court the power to hear factual challenges regarding CAT, excuse me, regarding CAT orders. Does it, what about with respect to withholding? Your honor, Nasrallah, the Nasrallah court expressly denied to address the implications of review of withholding a removal. However, for the same reasons that it arrived to CAT, I believe that this court has the same power to hear factual challenges regarding withholding a removal. Now let me ask you, let me ask you this. I understand the IJ did not reach this question and the government points this out in footnote four of the red brief, but the, our sort of on the, what we call our on the merits rule that allows us to address whether or not withholding was properly denied requires that there be eligibility for withholding. Your client was convicted of a firearms defense and sentenced to six years. I think that makes him categorically ineligible for withholding, even if he does have a reasonable fear of persecution. Am I wrong? You're, you're not wrong, your honor. However, this case arises before we ever even get to that question. I understand that that question wasn't reached, but I'm trying to figure out where this case is going. And there seems to be no dispute about whether he has a conviction and a six year sentence. Yes, there, there is no, there is no dispute. However, um, eight CFR two eight 31 C provides that for purposes of the screening determination, at least the bars eligibility of withholding a removal shall not even be considered. Yeah. So therefore the, the, the main issue here, your honor, is that I believe the IJ got it wrong in the sense that the abbreviated hearing of this expeditious process to remove, uh, those convicted of an aggravated felony is, is meant to, is meant to dispose of or do away with, um, with those cases that don't have any merit to them. This case, however, has some merit to it, at least to the, to the point where the court and the IJ, excuse me, the IJ should have allowed for a full merits hearing. Can I, can I ask you to go back a moment to what you were saying about the effect of for review of a final order of removal, right? Right. Okay. And in Nasrallah, the court looking at 1252 A2C said for cases involving non-citizens who have committed any crime specified in the statute, uh, which I think your client has, uh, federal law limits the scope of judicial review. They may obtain review of constitutional legal challenges to the final order of removal, but not of factual challenges to the final order of removal. Everyone agrees on all of the above. Um, you know, whatever we might've said in the past about an on the merits exception, doesn't that foreclose review of your factual challenge to the denial of withholding? Um, I, I don't believe so because I believe that that, I believe that that is specifically where I believe that a petitioner in that, in that sense has already submitted an I-589 and been denied on the merits. My client hasn't even been afforded that opportunity to submit, uh, an I-589 request for protection, whether it be under withholding or CAT. But the, the court didn't say anything about that. And I, I don't think the statute, I mean, maybe you can point me to the language and either the court's opinion or, or, or the statute that, that would make that, uh, an important fact. Cause as I read both the statute and, and Nasrallah, um, it's, it seems like if you are making a factual challenge to the final order of removal and if you're removable by virtue of one of the specified crimes, then that's a challenge you just can't, that we can't, uh, entertain. So what, what, what am I missing there? I, I believe that, that we, I believe that the protections that Congress has set forth for those who fear removal to a country where they'll either face persecution or torture have are intended for this type of, this type of case, regardless of the criminal conviction that would bar him from withholding or removal, that criminal conviction would not bar him from seeking protection under the convention against torture. And that for that process, the, the ineligibility should not be even considered at, at this stage of, of the, of the process. That's for a later date to determine whether, whether he's ineligible for withholding or not. On the assumption for the moment, uh, that at least cat relief is not foreclosed by the conviction and six year sentence. Tell me why there's enough here that there's a plausible ground for cat relief. I confess, I don't see it. I believe that, you know, I, even, even some of the world's worst criminals, the convention against torture protects them. Our country has signed on to protect them. I totally understand that. But the question is what's the risk of torture for your client? Risk of torture is the fact that he's a, he's a former gang member with, with gang tattoos that associate him with a, with the United States, Northern California gang. And that if removed, if removed to, to, um, Guatemala, he will face scrutiny as a result of his gang tattoos, which could lead to exposure of his homosexuality. And the, um, 2019, uh, human rights report for Guatemala. The BIA didn't reach any of these issues, did it? Excuse me, I didn't catch that question. The BIA, sorry, I don't do very well with a mask. Um, the BIA didn't really reach any of these issues, did it? We, we didn't, we didn't get to go to the BIA in this particular case. Right. So the, the BIA hasn't reached these issues because Congress, uh, has circumvented that, that relief, that appellate relief to the BIA. So, so this is only, this is only appealable to this, to this honorable court here before us. But I guess, I guess my, my point that I, that, you know, that I, I guess where I, where I want to, where I hold firmly on my point is why would Congress expressly provide that the criminal conviction bars are not applied during a reasonable fear interview, other than to allow those with criminal convictions who would otherwise be barred to present a full, their full case before, before a full, full hearing before the IJ. Well, here's why, here's why I think it's a rational thing to have the asylum officer do a credible fear without yet looking at the bars. And that is, uh, the asylum officer doesn't have in front of him or her, the criminal records. So, uh, I think Congress said, listen, the, the only thing we think the asylum officer is positioned to decide is whether based upon the fear, whether or not there's some sort of a bar because of a prior criminal conviction, that's not really available to the asylum officer, given the information available to that officer. So that makes perfect sense to me. Yeah. So, and that would be, so the bar would be determined at a later stage in the application process. And that, so that's where I'm trying to say is, is he shouldn't be, he shouldn't be held to that standard of, Oh, he's barred from eligibility until later after he's been at least allowed a fair shake at a full merits hearing. Right. And so are we reviewed, does the IJ review for this purpose, the credible fear or does, is the IJ supposed to review what would eventually be required, which is a reasonable fear. So just a reasonable fear, your honor. And then that is such a low threshold. We're talking about a 10% chance. So, I mean, it's really, what I see the purpose of this reasonable fear interview and the review of that reasonable fear interview, the purpose is to streamline and get rid of applications that are frivolous, just strictly get rid of the frivolous applications and allow those that are not frivolous or have some merit to them at least 10% threshold to proceed forward. And I believe this case here has at least that 10% threshold to proceed forward. And later, if a bar prevents him from getting any kind of protection, that's to be determined at a later date in a full merits hearing. Okay, good. Let's hear from the government and you've got it. Is that tone? This is Monica Anton on behalf of the attorney general. Can you still hear me? Okay. We're having terrible trouble understanding you. Okay. This is Monica Anton. Can you hear me now? Well, let's keep talking. Maybe it's going to get better. Okay. In response to Mr. Soto's observation that the regulation prohibits the asylum officer from considering the bars, the immigration judge is not precluded from considering those bars. And when the immigration judge is reviewing the asylum officer's determination, it would not make sense for the immigration judge to be precluded from considering the bars, then be forced to have the applicant file an application and withholding only proceedings and only at that stage apply the bars. When the immigration judge is reviewing the asylum officer's determination, as occurred in this case, Mr. Osada had the opportunity to submit documentation and could have argued that the conviction is not a disqualifying conviction. But the IJ just didn't reach that question, correct? That's right. The IJ did not address it. So that question is down the road, but it has not yet been decided. The only thing I can see that IJ decided was whether or not the asylum officer was correct in saying that there was no credible fear. That's correct that the IJ reviewed the asylum officer's determination and the IJ also heard the new claim that was made directly to the IJ regarding Mr. Osada's sexual orientation. The IJ did address both. Right. But again, it was credible fear. The IJ did say credible fear, but that's actually a lower standard than reasonable fear. So there's no error that's prejudicial to Mr. Osada in that regard. Let me ask you this. I understand that the level of fear in front of the asylum officer is different from the level of fear in front of the IJ if the IJ is deciding whether or not there's an entitlement or eligibility for asylum or withholding. So I understand those are two different things and that it's easier to satisfy the credible fear than to satisfy the reasonable fear. But my question is, when the IJ is reviewing the determination of the asylum officer and then there's no review of the decision by the IJ in the BIA, is the IJ supposed to apply the reasonable fear standard or is the IJ supposed only to decide whether the asylum officer got it right in applying the credible fear standard? So there's two things that I need to clarify. First of all, did we just lose Mr. Soto? And first of all, hang on a second, we might have lost the other counsel. Yeah, he's still connected. He just needs to turn his video back on. There he is. Okay, there we are. Okay, we didn't lose you after all. Okay. So I'm sorry, please go ahead with your answer. The first thing that I need to clarify is that this is a reasonable fear proceeding only. Credible fear was not the correct standard to apply. So both the asylum officer and the immigration judge should have applied the reasonable fear standard. The reason that it was not, it's harmless error that the IJ used the phrase credible fear because credible fear is a more generous standard than reasonable fear. So that was error on the part of the IJ to think credible rather than reasonable. Did I hear you just say it was also error on the part of the asylum officer to do credible fear? No, no, the asylum officer did evaluate reasonable fear. No, no, wait a minute. The asylum officer evaluated credible fear. And are you telling me that the asylum officer should have evaluated reasonable fear? Both the asylum officer and the immigration judge should have evaluated a reasonable fear. And when I'm looking at the record, I do see that the asylum officer made a reasonable fear finding. Well, counsel, could you just, in your answer, could you clarify for me what you think it is that we are reviewing? The immigration judge's determination is what's being reviewed in this court. What it was was a negative reasonable fear determination. The immigration judge in the written decision said credible rather than reasonable, but that's really what is happening here. And in terms of jurisdiction, as the court has stated, Nostralla has abrogated the on the merits exception. The IJ did not apply the bar to withholding on the basis of the conviction, but it would apply during IJ's review of the asylum officer's determination. Could you say that again? I did not understand what you just told me. Sure. Maybe I should start from the beginning as to what happened with the asylum officer and then the immigration judge. So Mr. Oceda was issued the notice of intent, or pardon me, DHS issued the notice of intent to issue the administrative removal order under 238B. Mr. Oceda then asserted fear of returning to Guatemala, so he had a reasonable fear interview with the asylum officer. The regulations state that if an asylum officer does not find a reasonable fear, then the non-citizen may seek immigration judge review of the asylum officer's negative reasonable fear determination. So that is what happened in this case. It then went to the immigration judge to review the immigration judge's polling of the lack of reasonable fear determination. Is that correct? Yes. Except that's not correct, because the IJ talked about credible fear. Right. Yes. Your point is that if there's no credible fear, then a for sure there's no reasonable fear. Exactly. It's like the difference between asylum and withholding of removal. But reasonable fear is a higher standard than credible fear. So it would be like an immigration judge saying that an applicant is not eligible for withholding of removal, so that applicant is necessarily not eligible for asylum. I use that only as an example, not to say that that is what we use for the word credible when this entire proceeding is a reasonable fear proceeding. So there's no reason to get into Nezrala at all, is there? Well, there is no reason to if the court's affirming the negative reasonable fear determination. It could do so without addressing jurisdiction. How can we do that? I mean, are you suggesting that we would? How can we reach the merits? I mean, would we have to assume the answer to the jurisdictional question to do that? Yes. And is it the government's view that we have authority to do that? Well, the jurisdictional question is, of course, a preliminary question, and the court has to withholding of removal, the statutory withholding of removal aspect. So Nezrala, of course, says that the factual challenge to the CAT claim is reviewable. The reason that under Nezrala, the withholding claim is not reviewable is that Nezrala assumed that a factual challenge would not be reviewable under 1252 A2C. And the only reason that it found that a CAT order is reviewable is that it relied on these statutory provisions that are specific to CAT claims. There are no corollary provisions for statutory withholding of removal. Statutory withholding is reviewable under 1252 A1, a final order of removal. So under Nezrala, 1252 A2C would apply, and the court would lack jurisdiction regardless of the immigration judge's determination or lack of determination regarding the conviction. Is it the government's position that the Supreme Court's decision in withholding and that we are, we do not, and why is that the government's position when I read on page 694 of the Supreme Court Reporter, the government, I'm just reading from the Nezrala opinion, the government suggests that our decision here might lead to judicial review of factual challenges to statutory withholding order. A statutory withholding order prevents the removal of a non-citizen to a country where the non-citizen's life or freedom would be threatened on a protected ground. That question is not presented in this case, and that we therefore leave its resolution for another day. Sounds as though the Supreme Court specifically told us they don't, they're not giving us that answer. Right, but the answer that they gave with regard to A2C in general abrogates the court's on the merits exception because it begins by interpreting A2C to mean that A2C would apply to any factual challenge to a final order of removal. No, at the moment we're talking, we're talking at cross purposes. Our on the merits exception with respect to withholding allows us to look at whether or not there is sufficient fear, reasonable fear, of persecution on a protected ground such that withholding would be appropriate. Even if the person is removable, if withholding is available despite removability, our on the merits rule allows us to review the reviewability, and that's precisely the question the court said they're not reaching. Yeah. So I don't see how Nasrallah can possibly be interpreted as abrogating our on the merits rule with respect to withholding. Because Nasrallah stated the general rule as 1252 A2C precludes all factual challenges. It took that to be, so what Nasrallah was saying is either that is reviewable as part of a final order of removal and therefore the court would under A2C to review a factual challenge, or as it's determined, a CAT order is something separate from a final order of removal, and 1252 A2C does not apply. So the question was not what is the scope of A2C as applied? The question was does it apply to a CAT claim at all? And the Supreme Court decided that it was not applicable to a CAT claim at all because of these two separate statutory provisions that make CAT orders. Well, I understand that a CAT order may actually be different from withholding, and that the fact that a CAT order is reviewable doesn't necessarily mean that a withholding order is reviewable. I get that. On the other hand, the court has said with respect to withholding, we're not deciding that question. That's for them to decide. So who do I trust? What they say or what you say? Well, they didn't decide the specific question of withholding of removal, but it's the reasoning that the court employed. Well, I understand that they've got reasoning that might lead us in that direction, but the court specifically says, and I'm reading from the court's opinion, that question is not presented in this case, and we therefore leave its resolution for another day. And in the meantime, we are bound by the authority that we're bound by. Yes. It's the reasoning of Nasrallah that's inconsistent with the on the merits exception. But Nasrallah didn't deal with a case where there was an on the merits exception involved. This is just a general introductory statement. But it's assumed that A2C applies to any factual challenges when the basis of removability is a disqualifying conviction. And that reasoning is inconsistent with the on the merits exception. I mean, I take it your point is that the, or I mean, this is a question, not a statement. So it is your point that the clearly irreconcilable rule for us to reconsider circuit precedent requires us to look at the reasoning that the court employed. We don't necessarily have to have a holding of the court specifically rejecting our rule. Is that your position? Yes, that is the government's position, that the reasoning of Nasrallah is so irreconcilable with the on the merits exception that the court would have to reconsider the basis of the on the merits exception. So you're asking this panel to reverse the rule of another panel without going en banc based upon the reasoning of a Supreme Court decision that might lead to your conclusion, even though the Supreme Court has specifically disavowed reaching that conclusion itself. Is that your position? Yes, because the Supreme Court's reasoning so undercuts the prior panel reasoning that it's essentially an open question now. It may well be that you're correct in terms of where the Supreme Court is eventually going to get, but I don't think a three-judge panel, based upon the possibility that the Supreme Court might disagree with us, is in a position to set aside the decision of another three-judge panel. Yeah, I guess you can ask for en banc reconsideration, but I don't see that we as a three-judge panel have that power. Well, let me once more try to understand why it is that when all we have before us is a decision that says that there was no reasonable fear, we even get to the question of Nasrallah and on the merits determination. The agency hasn't looked at any of that. No, the IJ did not address the conviction, but the, well, the IJ did not, but DHS did. DHS determined when it issued the removal order that the conviction was an aggravated felony, and that was the basis of the removal order. And Mr. Osada had an opportunity to contest that determination. When DHS issues the notice of intent to issue the removal order, it permits the non-citizen to contest either that the conviction is not, the conviction stated is not what they were actually convicted of, or to argue that it's not an aggravated felony, and he did not do so. So there has been a determination made that this is an aggravated felony conviction. The fact that it looks different from the way that an IJ or the BIA might address it does not take away from the conclusion that it's an aggravated felony conviction. But the implicit assumption of the IJ's order is that if he did have a reasonable fear of persecution, he would be entitled to withholding. Otherwise, why is he saying that? Maybe he says I haven't reached that question, but for purposes of my decision right now, I'm assuming that a reasonable fear of persecution would be a basis for withholding. He does not have that. So I don't see that the IJ reached the question as to whether or not the prior felony categorically disqualifies him from withholding. Rather, it implicitly assumes that it does not. I think on the facts, it's going to turn out that it does categorically withholding because it's six years for a gun offense. But IJ didn't decide that. And we're not supposed to review things that the IJ didn't decide. But in a 238B proceeding, the IJ is not addressing removability. Removability comes from DHS. It comes from that notice of intent to issue the removal order in which DHS states that it intends to issue an administrative removal order because the non-citizen was convicted of an aggravated felony. That question has been decided by an agency. I think we understand the government's position. I see that my time has long passed. The court has no further questions. No fault of your own. Thank you. Let's hear from petitioner's counsel. You have reserved some time. Thank you, your honors. Just to clarify the record, we are not contesting that Mr. Oceda has been convicted of an aggravated felony. But to clear the record, there was no gun involved. This was an incident where he and another gang member were beating up an individual. So there was no gun involved. I believe the other individual did have a knife in that case. Oh, I stand corrected on the gun involved. Correct. Just to clear the record. Thank you. Excuse me. Also, I'd like to point to Alvarado Herrera, just briefly, where this very court held that jurisdiction to review constitutional and legal challenges to the reasonable fear screening process, as well as factual challenges to the evidentiary support for the IJ's decision. I believe jurisdiction is clear that this honorable court does have jurisdiction. And I believe that Nasrallah does not prevent you from hearing and making a finding in this case or holding in this case. That being said, the petitioner rests. Okay. Thank you both. Thank you, Mr. Soto and Ms. Atun. The case of Oceda versus Garland now submitted for decision. Thank you very much.
judges: SCHROEDER, FLETCHER, MILLER